**In the Matter of the Application of LOUIS DREYFUS CORPORATION, Petitioner,**

**For a Judgment Permanently Staying the Arbitration Commenced by**

**v.**

**COOK INDUSTRIES, INC., Respondent.**

**INDUSTRIE CHIMICHE ITALIA CENTRALE S.p.AL., Petitioner,**

**v.**

**LOUIS DREYFUS CORPORATION, Respondent.**

**Nos. 79 Civ. 6274, 79 Civ. 6499.**

United States District Court, S. D. New York.

April 24, 1980.

Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for petitioners.

Alvin L. Stern, Pavia & Harcourt, New York City, for respondents.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In August of 1974 Cook and Dreyfus entered into a contract in which Cook agreed to sell and Dreyfus agreed to purchase 15,000 long tons of Canadian Feed Barley at 150 dollars per metric ton, subject to a "tolerance" of 5 percent more or less on the amount shipped. Subsequent to the purchase by Dreyfus from Cook, Dreyfus entered into a contract to sell these same goods to Industrie Chimiche Italia Centrale ("ICIC"). According to the parties, the Cook-Dreyfus and the Dreyfus-ICIC contract were merely two agreements in a string of sales.

The buyers in the string nominated two vessels to lift the purchased barley and these vessels were loaded in December 1974 and January 1975.

Subsequent to the loading, a dispute arose as to whether or not the vessel had

loaded a sufficient amount of barley and by May 16, 1975 the contracts were terminated. The buyers in the string contended that the appropriate amount of barley had been loaded and that they had satisfied the contract, while the sellers contended that the buyers had failed to accept delivery of the appropriate amount. In other words, Dreyfus' position as to its seller, Cook, is that it completed the contract and as to its buyer, ICIC, that the correct amount of barley was not accepted. The parties have agreed that the same set of facts are at issue in both Cook's claim against Dreyfus and ICIC's claim against Dreyfus.

In September 1979 Dreyfus received from Cook a Notice of Intention to Arbitrate and Demand for Arbitration. On September 24, 1979 Dreyfus filed a demand for arbitration against its buyer, ICIC.

On October 24, 1979, Dreyfus commenced a special proceeding against Cook. Shortly thereafter ICIC commenced a similar special proceeding against Dreyfus.

On November 21, 1979 Cook removed the special proceeding brought by Dreyfus to this court. Dreyfus thereafter moved to remand this proceeding on the ground that Cook had waived any right it might have had to removal and that unless that action were remanded, Dreyfus could be unfairly damaged by inconsistent results in the state and federal courts.

We denied Dreyfus' motion, whereupon Dreyfus removed to this court the proceeding commenced by ICIC against it. We accepted that matter as a related case and the parties stipulated that the motions before the court today would be heard and determined jointly.

We are presented with contracts evidencing a transaction in interstate or foreign commerce containing broad arbitration agreements, therefore, under Section 4 of the Federal Arbitration Act, we must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, ... make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Dreyfus and ICIC claim that the relevant statute of limitations has run and that therefore the suits are time-barred. They have urged us to stay arbitration and to thereafter dismiss the claims as untimely brought. In our view we are compelled under *Trafalgar Shipping Co. v. International Milling Co.* (2d Cir. 1968) 401 F.2d 568 to send the actions to the arbitrator and allow him or her to determine whether or not the statute has run. In *Trafalgar* it was argued that the federal court should determine the question of laches rather than sending the issue to arbitration. The Second Circuit however, putting to rest any confusion which may have been created by Judge Frank's dicta in *Reconstruction Finance Corp. v. Harrisons & Crosfeld* (2d Cir. 1953) 204 F.2d 366, squarely held that questions of limitations and of laches are solely for the arbitrator and that the only issue open to the federal court are those pertaining to "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, 9 U.S.C. § 4, *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. [395] at 403, 404, [87 S.Ct. 1801 at 1805, 1806, 18 L.Ed.2d 1270]." *Trafalgar, supra* at 571.

Dreyfus and ICIC nonetheless argue that *Trafalgar* does not here control because the parties had agreed that New York law would govern the limitations question and under New York law the court must decide whether the statute of limitations has run before submitting the controversy to arbitration.

For purposes of this discussion we will accept ICIC and Dreyfus' assumption (contested by Cook) that New York law requires the court to decide the statute of limitations question before submitting the action to arbitration.

We must therefore determine only whether New York law should govern us in determining the issue of whether or not the court or the arbitrator should decide the statute of limitations question.

In support of their contention that we should be bound by New York law in deter-

mining whether the court or the arbitrator should decide the issue of timeliness, ICIC and Dreyfus point to the following language in the contract:

"3. ARBITRATION. Buyer and seller agree that any controversy or claim arising out of, in connection with or relating to this contract, or the interpretation, performance or breach thereof, shall be settled by arbitration in the City of New York before the American Arbitration Association or its successors, pursuant to the Grain Arbitration Rules of the American Arbitration Association, as the same may be in effect at the time of such arbitration proceeding, which rules are hereby deemed incorporated herein and made a part hereof, *and under the laws of the State of New York*. The arbitration award shall be final and binding on both parties and judgment upon such arbitration award may be entered in the Supreme Court of the State of New York or any other Court having Jurisdiction thereof. Buyer and seller hereby recognizes and expressly consent to the jurisdiction over each of them of the American Arbitration Association or its successors, and of all the Courts in the State of New York. *Buyer and seller agree that this contract shall be deemed to have been made in New York State and be deemed to be performed there, any reference herein or elsewhere to the contrary notwithstanding.*" (emphasis supplied)

According to ICIC and Dreyfus, this language indicates that the parties intended that the contract should be governed by New York law and that therefore this court should determine the issue at hand under New York law.

■ Dreyfus and ICIC's argument fails to take note of the fact that the issue of who should decide the timeliness question, the court or the arbitrator, is a procedural rather than a substantive matter, see *Byrd v. Blue Ridge* (1958) 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953,[1] and while the parties have every right to their choice of substantive law in an arbitration proceeding and the federal court will respect such choice, *Robert Lawrence Company v. Devonshire Fabrics* (2d Cir. 1959) 271 F.2d 412, it has been more than clear since the *Erie* decision, that the federal courts have an interest in procedural uniformity which requires that federal rather than state laws of procedure be applied in this court.

■ We therefore hold that since the issue of who should decide the issue of timeliness is a procedural question, we must apply federal law and, as we have noted, the law in this Circuit is that the limitations question is for the arbitrator, *Trafalgar Shipping Co. v. International Milling Co.*, *supra*. Accordingly, we grant Cook's motion to compel arbitration and to dismiss the petition of Dreyfus; we also grant Dreyfus' motion to compel ICIC to arbitrate and to dismiss the petition of ICIC. Dreyfus' and ICIC's petitions to stay arbitration are denied.

So ordered.

---

1. In the case cited the Supreme Court held that the issue of whether the judge or jury should decide certain facts should be governed by federal law in a diversity case. The Court found first that whether the judge or jury heard evidence was not necessarily outcome determinative, and secondly that on balance the strong interest in uniformity among the federal courts should not yield to the policy of uniform enforcement of state-created rights.

In our view the question of whether the judge or arbitrator should hear the issue of timeliness is analogous to the question before the court in *Byrd*, and we therefore hold that the federal rule must apply.