SUMMARY ORDER
Petitioner-Appellant Carrington Capital Management, LLC (“Carrington”) filed a petition to compel arbitration pursuant to 9 U.S.C. § 4 and Respondent-Appellee Spring Investor Services, Inc. (“Spring”) moved to dismiss the petition. The District Court for the District of Connecticut (Eginton, J.) adopted a Magistrate Judge’s recommendation that Carrington’s motion to compel compliance with the agreement to arbitrate be denied and that Spring’s motion to dismiss the petition be granted. We assume the parties’ familiarity with the underlying facts and the procedural history of the case, as well as the issues on appeal. See Carrington Capital Mgmt., LLC v. Spring Investment Servs., Inc., No. 06 Civ. 1665(WWE), 2007 WL 2684728, at *1-3 (D.Conn. Aug. 2, 2007).
Carrington, a manager of hedge funds, and Spring, a broker-dealer which promotes and sells interests in hedge funds, entered into a consultancy agreement in which Spring was to promote and market Carrington’s funds on an exclusive basis. A dispute subsequently arose concerning whether Carrington breached the agreement by failing to make payments after the parties discontinued their relationship. The agreement included a provision requiring the mediation and arbitration of disputes, stating, in relevant part:
The party initiating arbitration shall give written notice of arbitration to the party against whom a claim is being made of its intention to have the claim finally settled by confidential and bind *630 ing arbitration in a location mutually agreeable by the parties governed by the laws of the Commonwealth of Massachusetts.
During negotiations over the location of the arbitration, Carrington filed a petition in district court to compel arbitration pursuant to 9 U.S.C. § 4.
The district court referred the case to a magistrate judge, who recommended denying Carrington’s motion to compel arbitration and granting Spring’s motion to dismiss the petition. See 2007 WL 2684728, at *1. The magistrate judge concluded that Spring did not refuse to arbitrate within the meaning of 9 U.S.C. § 4 and thus held that “the court does not have jurisdiction to either compel arbitration or to order a location for such arbitration.” Id. at *4.[1] The district court adopted the magistrate judge’s recommendation and dismissed the petition.
On appeal, Carrington argues that Spring has “refused” to arbitrate by failing to confer on a “mutually agreeable” location for arbitration. Carrington specifically argues that Spring’s unilateral commencement of an arbitration in the location of its choice — rather than a mutually agreeable location — constituted a refusal by Spring to arbitrate in the manner provided for in the agreement. Spring contends, however, that in order to have standing to compel arbitration under 9 U.S.C. § 4, the petitioning party must demonstrate that they are aggrieved by the other party’s complete refusal to arbitrate.
We review a district court’s denial of a petition to compel arbitration de novo. See Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir.2004). Section four of the Federal Arbitration Act (“FAA”) provides, in relevant part:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.
9 U.S.C. § 4. (emphasis added). Pursuant to this provision, when a party moves to compel arbitration, “[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.” 9 U.S.C. § 4.
“Under the FAA, the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.” Jacobs, 374 F.3d at 88 (internal citation and quotation marks omitted). “A party has refused to arbitrate if it ‘commences litigation or is ordered to arbitrate the dispute [by the relevant arbitral authority] and fails to do so.’ ” LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir.2004) (alterations in original) (quoting Jacobs, 374 F.3d at 89); see also PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir.1995) *631 (holding that “an action to compel arbitration under the [FAA] accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute”).
Applying these principles, we conclude that Spring has not refused to arbitrate within the meaning of 9 U.S.C. § 4 because it has neither commenced litigation in lieu of arbitration (in fact, it was Carrington that commenced the instant litigation) nor has it refused to abide by an order from an arbitrator to arbitrate its dispute with Carrington. See Jacobs, 374 F.3d at 89. Indeed, it was Spring that initiated the arbitration.[2] Because there is undisputedly a valid agreement to arbitrate and the party opposing this petition to compel arbitration — Spring—has not refused to arbitrate, Carrington cannot employ 9 U.S.C. § 4 to compel arbitration.
Carrington argues, however, that it was nevertheless “aggrieved” by a refusal to arbitrate because Spring did not fulfill its obligation under the arbitration agreement to provide Carrington with notice of the arbitration and to meet and confer with Carrington on the location issue. Relying on our decision in Bear, Stearns & Co. v. Bennett, 938 F.2d 31 (2d Cir.1991), Carrington argues that when a party commences an arbitration in violation of a forum selection provision, as Spring purportedly did here, a district court has the power under 9 U.S.C. § 4 to compel arbitration “in accordance with the terms” of the forum provision. According to Carrington, even though the respondent in Bear Steams did not completely refuse to arbitrate, this Court nevertheless ruled that a district court may entertain a 9 U.S.C. § 4 petition in circumstances where a respondent has commenced an arbitration proceeding in a manner contrary to a venue selection clause in an arbitration agreement.
We disagree; Bear Steams is readily distinguishable from the case at hand. There, the petitioner, a resident of Florida, filed an arbitration demand to have his dispute with Bear Stearns (in which he alleged account mismanagement) arbitrated in Naples, Florida. 938 F.2d at 31. Bear Stearns, relying upon the parties’ customer agreement, filed a petition in the Southern District of New York to compel arbitration in New York City. Id. The district court dismissed the petition, “holding in substance that the hearing venue was a procedural matter to be determined by the [American Arbitration Association], not the court.” Id. at 32. We disagreed, concluding “that the clear and explicit contractual terms at issue herein cannot be disregarded so readily.” Id. We rejected the petitioner’s argument that the “situs of suit” should be determined by the arbitrators rather than by the district court. Id. *632 at 32. This Court concluded that the “situs of suit” was New York City and “[w]here there is a valid agreement for arbitration, Congress has directed the district courts to order that arbitration proceed ‘in accordance with the terms of the agreement.’ ” Id. (quoting 9 U.S.C. § 4).
In this case, although the agreement at issue specifies that the arbitration will be “governed by the laws of the Commonwealth of Massachusetts,” it further provides that the arbitration must take place “in a location mutually agreeable by the parties.” Unlike in Bear Steams, the arbitration provision here does not specify a particular place for the arbitration that has been ignored by a party or the arbitrator. This Court in Bear Steams determined that a district court can order an arbitration to proceed in the “situs of suit” that has been specified in a forum selection clause of an arbitration agreement if arbitration has been commenced in a location different from that explicitly identified. Am agreement-to-agree locale clause is not a clause that identifies a specific “situs of suit.” Thus, because there is neither a specified location in this forum selection clause nor an arbitration pending in a locale different from that identified in such a clause, we do not read Bear Steams to confer jurisdiction upon the district court to entertain Carrington’s grievances — ie., that Spring failed to provide proper prearbitration notice and that it failed to engage in discussions regarding a mutually agreeable arbitration location.
The Court has considered Petitioner’s remaining arguments and finds them to be without merit. Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.

. The magistrate judge also concluded that if the parties cannot agree on an arbitration location the American Arbitration Association ("AAA”) may choose a site. See 2007 WL 2684728, at *4. We disagree. In a letter sent to the parties, the AAA expressly rejected the proposition that it possessed such authority, citing the wording of the parties' arbitration agreement and the AAA’s rules.

. Carrington’s post-oral argument conduct before this Court suggests that it is the party obstructing the arbitration process. At oral argument, counsel for both parties indicated the possibility of resolving the location dispute and specifically noted that an arbitration in Rhode Island with a New York arbitrator might be a “mutually agreeable” arbitration location within the meaning of the parties' contract. Unfortunately, a settlement was not reached. Carrington’s post-argument submissions suggest continued intransigence on the location issue. For instance, in a letter to Spring’s counsel, Carrington stated that it would only agree to the Court's proposal that the arbitration take place in Rhode Island (Spring had already agreed to Rhode Island) if Spring paid 50% of Carrington's travel expenses. This new condition is clearly not a part of the arbitration agreement. In reality, Carrington, through its post-submission conduct, is functionally refusing to arbitrate by making demands to which it is not entitled under the arbitration agreement.